RANDOLPH RAND CORP., J. J. BOLL v. UNITED STATES    (No. 5181)*

United States Court of Customs and Patent Appeals, February 17, 1966

*Barnes, Richardson & Colburn (E. Thomas Honey, of counsel)* for appellants. *John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Shiela N. Ziff* for the United States.

[Oral argument November 1, 1965 by Mr. Honey and Mr. Vance]

---

Before WORLEY Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges

SMITH, Judge, delivered the opinion of the court:

During 1957 and 1958 appellants imported metal frames which were sold to manufacturers who used them in the manufacture of leather cigarette cases. The report of the collector dated March 30, 1959 shows that the appraiser's description of the merchandise was accepted and adopted by the collector in liquidation and the merchandise was classified as "Parts of Smokers' articles nspf at 30% under paragraph 1552 of the Tariff Act of 1930," as modified by the General Agreement on Tariffs and Trade (T.D. 51802). The protest insofar as it pertains to the present appeal is that the imported frames are properly dutiable as articles or wares nspf at 20% under paragraph 397 of the Tariff Act of 1930 as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108).

The protest claim as litigated before the Third Division of the U.S. Customs Court was, in effect, a retrial of that issue, as previously before the court in *Randolph Rand Corp. et al.* v. *United States*, 45 Cust. Ct. 130. The record of that case was incorporated into the record below. There the Government did not offer any evidence in support of its case or in rebuttal of plaintiff's case. The parties do not argue that the decision there is controlling in this appeal.

In addition to the incorporated record, both parties took additional testimony after which the court overruled the protest *without* affirming the classification by the Collector of Customs (C.D. 2445), citing *Innis Speiden & Co.* v. *United States*, 14 Cust. Ct. 121, C.D. 924.

The pertinent paragraphs of the Tariff Act of 1930, insofar as they are applicable to the collector's classification and the protest,[1] are:

Classified under—

Paragraph 1552, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

> All smokers' articles whatsoever * * * and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware or stoneware:

> \*    \*    \*    \*    \*    \*    \*
> Other_____ 30% ad val.

---

[1] An alternate protest claim, as parts of cigarette cases in chief value of leather at 20 percent under modified paragraph 1552 was found to be "abandoned" and was dismissed by the Customs Court and is not before us.

Claimed under—

Paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to GATT, T.D. 54108:

    Articles or wares not specially provided for, whether partly or wholly manufactured:

        \*        \*        \*

      Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

        \*        \*        \*

      Not wholly or in chief value of tin or tin plate:

        \*        \*        \*

        Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum_____ 20% ad val.

At the trial both parties introduced evidence. Appellant introduced evidence showing uses of the imported frames for other purposes than in the manufacture of leather cigarette cases. Considered in its most favorable light, this evidence does not show *any* of such uses to have been in commercial use until 1961. It was established that one manufacturer, Prince Gardner, had in 1961 sold its leather cigarette cases (in which the imported frame, Item 3988, had been incorporated) to Telectron who had used the cases for the radio signal transmitter in their remote controlled garage door opener. We do not think this evidence of such use in 1961 is either pertinent or controlling in overcoming the presumption of correctness which attached to the collector's classification of entries liquidated in 1957 and 1958. We therefore do not agree with the lower court that appellants' new evidence introduced herein is sufficient to overcome the presumption of correctness of the collector's classification.

The lower court predicated its position upon our decision in *United States* v. *Ford Motor Co.*, 51 CCPA 22, C.A.D. 831, apparently regarding it as authority for considering the 1961 uses of the imported merchandise as controlling the proper classification of the merchandise when imported in 1957 and 1958. De do not so regard it. In the *Ford* case, it was clear that the 1960 entries were available for the 1960 Ford production which the evidence established as including some 10,000 engines which were not used in automobile production.

The gist of appellants' argument seeking to overturn the collector's classification was stated by the Customs Court as follows:

Plaintiffs argue that, however one may read the record, the frames of these protests do not bear the mark of special adaptation to commercial use limited to the manufacture of smokers' articles. \* \* \*

Appellants in effect treat the term "smokers' articles" in Par. 1552 as a use provision and argue other subsequent uses for the imported frames overcome the classification. To the extent the term "smokers'

articles" may connote a chief use, it is well settled that such use is to be determined as of the date of importation. In cases where classification has been made dependent on chief use, evidence of such *use* at the *time of importation* has been accepted, and the question determined on such evidence. Cf. *Wilbur-Ellis Co. et al.* v. *United States*, 18 CCPA 472, T.D. 44762 and cases there cited.

In *H.J. Baker & Bro.* v. *United States*, 37 CCPA 52, C.A.D. 419, this court stated:

> * * * evidence as to the chief use of the merchandise after importation is not sufficient to establish chief use of the merchandise at the date of or immediately prior to the date of importation.   (p. 54)

The court further stated:

> Where classification of designated merchandise under a particular paragraph is expressly declared to be dependent upon chief use, such use is to be determined as of the date of importation or immediately prior thereto.   *W.J. Lake & Co. Inc.* v. *United States*, 27 C.C.P.A. (Customs) 247, C.A.D. 94; *Bangor & Aroostook Railroad Co. et al.* v. *United States, supra.*
>
> Appellant produced other witnesses who testified as to the use of imported sunflower seed meal at dates subsequent to the dates of importation of the involved merchandise, but this testimony is of no value in reaching a decision in the instant case. Appellant has the burden of proving that sunflower seed meal was chiefly used as an ingredient in the manufacture of fertilizer at or prior to the date of importation of the merchandise here involved. This he has failed to do.

We recognize the foregoing cases as relating to an analogous rather than the direct issue here presented. We think, however, that the rationale underlying these cases should be applied here, i.e., that the evidence relied upon to overcome the presumptive correctness of the collector's classification must be evidence relating to conditions which existed at or contemporaneous with the time of importation. When so tested, the evidence adduced below of uses of the imported merchandise some years after the date of importation is not persuasive of the incorrectness of the collector's classification. On the facts of this case, we find the appellee's reasoning convincing. Appellee states in its brief, and we agree,

> * * * an article which, prior to and during the period of the shipments in issue, has been used for commercial purposes solely in the manufacture of cigarette cases is dedicated to such use although several years later less than one-half of one percent of those cases have been diverted to use as transmitter cases.

Appellee raised two alternative claims in the event the collector's classification was found to be erroneous. Since we find that appellant has not discharged his burden of overcoming the presumption of correctness of the collector's classification, we do not find it necessary to pass on either of these alternative claims.

28

■ Appellants have had the burden of proving the collector's classification erroneous. From the foregoing it will be apparent we do not agree with the position of the lower court that the evidence produced by appellants is, as a matter of law, sufficient to overcome the presumption of correctness of that classification of the merchandise in issue. Finding as we do, that the evidence is legally insufficient to overcome the presumption of correctness of the collector's classification, we agree with the holding and judgment of the lower court that the protest claim under par. 397 be overruled. For this reason, the judgment is *affirmed.*